May it please the court. My name is Marjan Bahmani. I'm the attorney for the petitioner Munazza Rahman, and I would like to reserve two minutes for rebuttal. All right. Please watch your clock. Thank you. Your Honor, this case is about the government misconduct and about the government not properly adjudicating the case for so long. Having lost the file and having delayed the background check of the case for so long that basically my client aged out. And then they used a different standard of persuasion for the sister, and she got asylum and the brother, the two brothers did not. The sister was older than the two brothers. That's correct. But she still got asylum, which to me is completely against any proper adjudication of the case. Did she get that as a derivative or is it on her own? She got it as a derivative, Your Honor. A derivative of her mother's, whose application was still pending. Correct. And your client, who was exactly similarly situated, was sent to another I.J. who was referred for removal. Correct, Your Honor. Yes. So when you say that your client aged out, he really actually, if he's unmarried, he would still have been eligible as a derivative. That's correct, Your Honor. But he got married. What's his marital situation now? Well, right now he's divorced. But he got married. But this happened many, many years after the government didn't do its job. Okay. So what evidence do we have of affirmative misconduct by the government? Your Honor, the government admitted having lost the file. It's in the transcript, page 92. Then the original application was filed in 1993. My clients, the mother of my client, they all received recommended approval in 1997, four years after the original filing of the asylum application. Then when they received the recommended approval, at that time the government says, oh, well, we need more time now to do background check, which I think four years was plenty of time for them to do background checks. Then it took another until 2003, and the background checks were still not completed. The recommended approval was still pending up to 2003, ten years after the filing of the original asylum application. And if that's not enough, then the government used the wrong standard between the sister and the brothers. They gave the sister asylum who was older. If anything, the brother should have received it. And then they denied it. They referred the cases of the brothers to the judge. And then as this thing wasn't enough, the judge then used the wrong standard of persuasion and proof, because she should have already been considered an asylee. The recommended approval basically states that the mother was found to be a refugee. And all they're waiting for is the background check. It's in the file. So refugee status was established already. And that would presumably account for why they gave it to the sister. Exactly, Your Honors. Exactly. And now the government, after ten years, is coming and telling us, well, he aged out. Well, he got married. Yes, but if they did their job properly, if they didn't do so many mistakes, first they lost the file. Then they adjudicated the case instead of a year or five months or really technically it takes three months for adjudication of an asylum application, Your Honor. I know. I've been doing this for this is my 14th year. Took them ten years. By ten years, they still didn't have either way a denial or an approval. And they referred the case to court, which means the case was still pending, the mother's case. In the meantime, the son's case was denied, because they expected him to have his own claim for asylum. Now, Congress's intent when they promulgated the Child Status Protection Act was to keep families together. It's always been the intent of Congress to keep families together. If a child who's five years old waits 20 years for the government to adjudicate the claim properly and age out, we can't expect a five-year-old child to basically have his own claim for asylum. He was five. In my client's situation, he was 17 when he came to the United States, Your Honors. So this whole thing could have been avoided if the government did its job properly. Can I ask you, why did the mother withdrew her application, ultimately? Because Because after ten years, Your Honor, she was married to a U.S. citizen. And realistically, when there is another relief, because asylum is a discretionary relief, only upon no other reliefs available. So she married a U.S. citizen. She could adjust through her husband, and she did. The fact that the mother adjusted shows you that there was no derogatory information in her background for her not to be eligible for asylum, because she adjusted. She's now a permanent resident of the United States. So she was literally forced to choose between getting married and getting adjusted. Exactly, Your Honor, because ten years her case was pending. And once she got married, that was the end of it. That was the end of it. And the sister got asylum, even though the mother only received recommended approval. And then the government in its brief discusses that, you know, public policy. Well, public policy is basically helped if the government adjudicates applications in uniform, with uniformity. If one application is denied, and this case goes beyond immigration, if they do this for family members, if they grant one family member and deny the others, based on the same facts and circumstances, then what do we have? How is public policy helped? If I cannot rely on our government to be at their best, to do their utmost, to do proper adjudication of cases, to be at their best, to be at their best, to be at their best, to be at their best, to be at their best, to be at their best, to be at their best. To be fair and to do things with honor and integrity and fairness. How can I expect a private citizen to do so? Let me ask you a question. The government submitted a statement saying that the mother's initial asylum request was denied. Did you ever receive a denial? No, Your Honor. The fact that the office cannot make a decision, they refer the case to court. It's not a denial. The fact that it was referred to court means it wasn't a denial. Could I ask you, there's a Second Circuit case in somewhat analogous circumstances, where the court remanded to explain why one, why, for example, a husband got a, was admitted as an asylee, and the wife was denied. And they remanded to the BIA to explain why one got it and one didn't. Assuming that the court was willing to grant that relief, would you, do you think that would be of any use? Your Honor, already, this case went to trial for like five years. And at no point was the government able to explain why the sister got asylum and my client didn't. They couldn't explain it. Were they asked to explain it? Yes, they couldn't explain it. They even at first said, oh, he got granted asylum, the sister, the mother was granted asylum. Then they said, oh, no, no, it was really recommended. It wasn't really an approval. They didn't know what they were doing all those years. And to this date, I have no evidence to show that it was denied. They never showed any. They just say it was denied. It wasn't denied. It was referred. I'm sorry. All right. You want to save your time? Yes, Your Honor, I do. Thank you. If it pleases the Court, David Whatmore for the Attorney General. Your Honors, I think we need to clear up a few points that were not exactly squarely explained regarding the way in which this happened. The asylum application was filed in May of 2003. Petitioner aged out in August of 1995. This was a number of years prior to the Child Status Protection Act coming into effect. Therefore, he proceeded with his own application, which was filed in September of 1997. So at that time, he was not considered to be a rider on his mother's application. When you said he aged out, you're saying he turned 21 before 1995? That's correct. He turned 21 on August 22, 1995. Right. But turning 21 doesn't make you age out if you're not married. If he exceeded the age at that point, he would have aged out. No. If he's unmarried, the statute said he doesn't age out. That someone who's unmarried beyond the age of 21 does not age out. That's correct. That's the statute as amended by the Child Status Protection Act, which didn't come into effect until August 6, 2002. So this is why the case was proceeding as it did. Is that act retroactive? I believe this Court has interpreted it to be retroactive. And it would apply to him? Yes, it would have applied to him, but for his marriage. Okay, but he's not married anymore. But when did he get married? He got married in 2004, February 21, 2004. That's after the enactment of the act, so he would be entitled to the protection of the act. Oh, yes, Your Honor. I think we're talking about two different questions. I'm explaining the procedural history of how he started on his own proceedings, which ultimately came to be this case, why he has an individual asylum application which was filed in 1997, which is still the case that's pending today. Well, he's not married today, right? Once he is married, he would be cut off. And his mother withdrew the application, which also would cut him off. According to not you, but someone in the DOJ, do you know this person and why this person would submit? Jeffrey Bernstein? Yes, he's a colleague of mine. Okay. He submitted a representation to us that the mother's original asylum application was denied. And he doesn't provide any evidence of that, no support. Yes, Your Honor. I spoke with Mr. Bernstein. He spoke with DHS. It was denied initially by an immigration officer. Then in a hearing that took place before an immigration judge on February 2, 2005, this is a hearing for the mother. So she reapplied and then the hearing went forward on her asylum application until she withdrew it. And that withdrawal occurred on October 26. I don't understand. Maybe I don't have enough experience with this process. She came into the country. She claimed asylum. The officer who she spoke to said no. Yes, eventually. And then she was referred to an IJ for a hearing. Well, first a notice was issued to her stating why she was removable, charging her with grounds of removability, and stating that she no longer had status in the country. Then when she appeared before the immigration judge, she reapplied for her asylum application. That's the ---- Wait a second. I'm still focused on the first asylum application. I think the representation by Mr. Bernstein is at least partially false. And I'm very concerned about that because the fact of the matter is that first application was referred was recommended for approval in 1997. This is the mother's application. The mother's. Isn't that correct? That is correct. So then the statement that was made of the representation by your colleague at DHS is false. No, that's untrue, Your Honor. There was a preliminary approval letter sent. That's not the end of the process. Well, where's the ---- Do you have any evidence that it was denied? Your Honor, that's not our burden to present that evidence. No, no. The petitioner bears the burden. I'm sorry. We sent out an order requiring you to give us the information regarding the status of the original petition. Right, which has been withdrawn, which was the proper response to your inquiry. Well, I would have thought you would have provided us with the documents to show this because I don't think this is consistent with the documents we have on the record. Well, Your Honor, the key to the applicability of the Child Status Protective Act is whether the application was voluntarily terminated. It was. Mr. Rockmont's counsel just made that representation to you as well. Well, it was supposed to happen. So life goes on. Your agency just, you know, loses a file. The case drags on forever. And this woman finally remarries. Could you tell me why the sister was admitted? I can't, Your Honor. You can't. The petitioner never proffered that evidence. Pardon me? The petitioner never proffered that evidence or made an inquiry. Presumably the sister was available. I mean, was the sister available? There's no question that the sister was older. Well, there's also no affirmative obligation on the government if one sibling is granted asylum in the discretion of the Attorney General to grant it to anybody else. Well, Mr. Weckler, you mentioned discretion. The Attorney General does have discretion, doesn't he? That's correct, Judge Ningen. He's not just an automatic pilot. And you are here, and you are his representative, and you should have discretion. And the facts of this case, you can see, anyone can see, are quite bad for the government. The government has behaved badly. And I would have expected the government to concede. But if you're not going to concede, will you agree that this goes back and is handled with mediation? Your Honor, no, we wouldn't concede. Why not? Well, I'll tell you. The first is the mother's application clearly is no longer before. I know, but you lost it. Any judicial body. You lost it. No, Your Honor. The whole idea that the case was lost, that the file was lost, is an offhand statement. It's on page 92 of the transcript. And it's the attorney who came to court that day, the judge, the immigration judge. Whose attorney was it? I believe it was a DHS attorney at that time. All right. That's your agency. It says it was lost. Well. Don't put it off. Lawyers for the agency speak for the agency. The agency admitted that it was lost. Right. And there's no indication that it was permanently lost because proceedings took place right after that. Really, really, you're digging yourself a really big hole. Just so you know. Why did it take so long if it wasn't lost? Long between which aspect? Well, apparently on July 14, 1997, they told her her application had been recommended for approval pending a background check. She gets remarried in 2006 and withdraws the application because it still hadn't been acted on. That's a decade. Well, it was acted on, Your Honor. It was acted on back in 2002 when she was referred to proceedings. When the notice was issued, it was acted upon, and then she went into proceedings. No, no, no. That is an absolute incorrect statement because, or at least it's inconsistent with what your colleague, Mr. Bernstein, said. Mr. Bernstein said it was denied, and then she was given an NTA for removability, and then she reapplied. This is what your colleague said. I don't know if you bothered to read it or see if there was evidentiary support for it or documentary support. I'm aware of this brief. You are aware of that. I am. Okay. Oh, that's good. So is it true? It is true. I mean, it's different from what you're representing right now. My understanding of how that process took place was the immigration officer who had the case referred it with a denial referral to the immigration judge. Once the notice was issued, the petitioner appeared before the immigration judge and reapplied for asylum. You know, you could be a really good PR person for some elected official. My understanding of how that process took place, where are the facts? Well, I would step back from this, actually, Your Honor, and assert that actually none of that matters. There's absolutely no evidence whatsoever in the record of any affirmative misconduct by the government in any case regarding how long this process took. Petitioners' counsels proffered nothing in that respect. We do know that these statutes have been ---- The record sort of speaks for itself. Should it take this long to act on an asylum application? And at the same time that her application was pending, they admit the daughter as derivative, and they deny it to the brother. An older sibling is admitted derivatively, and they deny it to her brother, who is the petitioner here, and you say that she's the one who has to come up with the explanation for it, that is your adversary? Yeah, I can't speak to the situation with the sibling. No case has held that a sibling's grant of asylum, unlike a parent or a child's grant of asylum ---- No, but there are cases that have held that the agency has to act consistently. It can't act arbitrarily. And there's no evidence that it did act arbitrarily. There is evidence. His older sister was admitted derivatively on the mother's application, as I understand the record. We do not have evidence of those proceedings in the record. We do not have evidence of those proceedings. Of the siblings, of the proceedings that the sibling went through in the record, no, we do not have that evidence in the record. And what does that mean? What does that mean? Does that mean you don't know? Well, I would assert that it's not germane to this case, because ---- Well, suppose we think it's germane. I don't understand that it's not in the record. Do you know or you don't know? I don't know. And you were not interested in finding out. None of this bothered you as you read the narrative of what went on here? None of this bothered you? No, no, Your Honor. At this stage, the individual was married. Do you know who your client is? I am aware of who my client is, Your Honor. Yeah, your client is the sovereign, and your job is to see that justice is done. And when you read a transcript or a record that looks awful, looks like it wasn't done, you might be curious enough to find out what happened, instead of standing up here and saying, well, the record doesn't disclose why the agency acted inconsistently, but it does disclose that it acted inconsistently. Well, Your Honor, I would take issue with that statement. The statute, the only statute upon which he may achieve, the petitioner may achieve, derivative asylum is no longer applicable. It's unquestioned that he was married. It's unquestioned that his mother withdrew the application, so it no longer applies. The only issue that is before the court is his individual application, and he presented absolutely no evidence of a well-founded fear of future persecution, and he offered no evidence that he suffered any persecution. That asylum application is the only issue before the court. The rest of it doesn't matter. It was cut off during the marriage. So you say there are cases, at least there's one from the Second Circuit case, in which one relative was treated differently than another. It was a husband and wife in that case. But he's not qualified. And the Second Circuit said that the BIA should tell us why one was treated differently than another, except for the fact that it was a different I.J. And that may be the case, Your Honor, but that asylum application is no longer before the court. It was extinguished. The marriage extinguished the mother's application. The withdrawal extinguished the mother's application. What was the mother supposed to do? Her application was pending for a decade, more. So life goes on. She finally got married. He got married. She should have postponed her marriage. Is that the government's position? No, Your Honor, that choice has legal consequences for her children. So she should have not gotten married in order to facilitate her son, after having waited all this time and being diddled around by an incompetent agency. I would take issue with the agency being incompetent, Your Honor, but the idea that it wasn't anybody's choice but hers to make and then bear the legal consequences, and beyond that, it didn't even matter. Who in the Department of Justice knows what position you're taking? All of my superiors are aware of this position. Is Eric Holder aware? I can't speak to the Attorney General. I wouldn't think so. Who exactly is your supervisor? My team leader is Mary Jane Kando. And how long have you been doing this kind of work? I've been with the Office of Immigration and Litigation for two years, Your Honor. Two years. So, okay, you obviously have much less experience with the competence of this department and its lawyers than we do. I'm not sure if there's a response to that, but our position is, Your Honors, I'll wrap up if you have no further questions. The issue with regard to the mother's application became null and void upon the marriage that Petitioner entered into in 2004. Therefore, regardless of whether the mother ultimately withdrew, her asylum application was still pending before the immigration judge at that time. Then she ultimately withdrew it. That was his second strike, completely cut him off. We must look to the underlying merits of his individual application. There's no evidence of past persecution. They concede that. There's no evidence of a well-founded fear of future persecution whatsoever, and therefore the petition for review should be denied. Do you have anything else to say? Could I ask you, maybe Judge Noonan may have interrupted your answer to the first question. Are you opposed to mediation? Would we consider mediation? I would consult. We would always consider it, and I can consult with my superiors regarding it. Okay. But certainly we would consider it. Do you have to go into something further? Thank you. Your Honor, if I may, the government is shifting the burden of responsibility to my clients who waited for a decade or longer to see their asylum application, which was pending. Well, I'm curious about the record. I'm very troubled. I think the DHS has made some misrepresentations to us. Do you have any documents that would show that the first asylum application was denied? No, Your Honor, I do not. And you say that it wasn't denied. No, it wasn't, Your Honor. They don't deny asylum. And we have a representation by the DHS that it was denied. So I would think that if that was false, that would be an affirmative misrepresentation and affirmative misconduct. Also, Your Honor, the sister's application was the sister received asylum based on the application of the mother. I have argued this in my brief. The government at no point came and said that this wasn't true. Now they're alleging that the sister got asylum through some other means. The only way the sister could have received asylum was through the derivative application of the mother. And if the mother's application would have been denied, the sister would not have received asylum, Your Honor, as a derivative of the mother. This is clear. This is on the record. They didn't – they never contested that. And now at this level, they're contesting that. And they're also saying that regardless of what the government has done, regardless of having lost the file, regardless of waiting ten years for an application, regardless of doing – of not uniformly adjudicating applications, that they didn't do anything wrong. They're basically telling you, so what? We did it, so what? He married, she got married, so what? It was her choice. It was the government's obligation to abide by the laws of the United States. It was the government's obligation to properly adjudicate the application's We understand that argument. Is there anything else? No, Your Honor. Okay. Thank you very much. Does anyone else have any other questions? Okay. Thank you very much, counsel. Rahman v. Holder will be submitted. Banas v. Bogg has previously been submitted.
judges: Korman, Noonan, Wardlaw